# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FEKKES LAND, LLC, a Washington limited liability company,<br><br>    Petitioner,<br><br>    v.<br><br>UNITED STATES OF AMERICA, and the UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>    Respondents. | NO. 2:16-cv-00378-SAB<br><br>**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING RESPONDENTS' MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Petitioner's Motion for Summary Judgment, ECF No. 11, and Respondents' Cross-Motion for Summary Judgment, ECF No. 15. A hearing was held on June 8, 2017 in Spokane, Washington. Petitioner was represented by Christopher Ries and Respondents by Vanessa Waldref. The Court took the motions under advisement. For the reasons stated herein, Petitioner's Motion for Summary Judgment, ECF No. 11, is denied, and Respondents' Motion for Summary Judgment, ECF No. 15, is granted.

//

//

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY. . .** ~ 1

## Statutory Overview

Pursuant to the Reclamation Act of 1902, ("Act") federal irrigation water could not be supplied to lands in excess of 160 acres. 43 U.S.C. § 431. The Act does not place a supply limitation on the amount of land leased nor does it require any reporting regarding the amount of land owned. *United States v. Quincy-Columbia Basin Irrigation Dist.*, 649 F. Supp. 487, 489 (E.D. Wash. 1986). Further, the Secretary of the Interior is authorized to "make such rules and regulations as may be necessary and proper for the purpose of carrying out the provisions" of the Act. 43 U.S.C. § 373.

In 1982, Congress enacted the Reclamation Reform Act ("RRA"), 43 U.S.C. §§ 390aa, *et seq.*, which expanded the acreage limitations for landholders to as much as 960 acres, but also imposed limitations on leased land and required annual reporting through the submission of certification and reporting forms (Annual Forms). There are two paths by which a landholder can qualify for the greater acreage limitations of the RRA: (1) district election; and (2) individual election. 43 U.S.C. § 390cc. With respect to a district election, an irrigation district may voluntarily amend its contract to conform to the new requirements of the RRA (discretionary provisions), in which case all landholders owning land within the district would automatically be subject to the higher acreage limitations of the RRA. *Id.* § 390cc(a). However, irrigation districts retain the option not to conform to the discretionary provisions, in which case they remain subject to the reclamation law in effect immediately prior to the date of the enactment of the RRA (prior law). If a district elected to remain under prior law, individual landholders within the district would continue to be subject to the 160 acre limitation unless they individually elected to be subject to the discretionary provisions of the RRA. This is known as an individual election and is done by executing an irrevocable election form. *Id.* § 390cc(b)-(c).

//

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY. . .** + 2

**UNDISPUTED FACTS**

Petitioner Fekkes Land, LLC, is a Washington Limited Liability Company formed in 2009 and owned by its two members, William and Roberta Fekkes (the Fekkes), husband and wife. Prior to forming Petitioner, the Fekkes personally owned certain lands subject to the RRA upon which they operated a dairy and farm enterprise. The total irrigable acreage was 380.8. This land is located in the Quincy-Columbia Basin Irrigation District (QCBID), which has not amended is contract with the Bureau of Reclamation to conform to the discretionary provisions of the RRA.

In 2006, the Fekkes endeavored to conform to the discretionary provisions of the RRA by executing an irrevocable election in their individual capacities. On November 20, 2009, the Fekkes formed Petitioner Fekkes Land, LLC for taxation and business structure purposes and transferred title to the property to Petitioner. This transfer merely changed the name in which title to the property was held, and daily operations of the dairy and farm did not change.

Prior to the 2010 irrigation season, William Fekkes met with Brenda Poldervart of the QCBID to complete all Annual Forms necessary to establish eligibility to receive reclamation water. Because only ownership of the property changed to Petitioner and the Fekkes were the sole members of Petitioner, it did not occur to William Fekkes to report the change in title to the property to QCBID. As a result, Petitioner was not listed as a wholly-owned legal entity in Section 6 of the 2010 Form 7-2180, nor was an irrevocable election form for Petitioner completed prior to the 2010 irrigation season. Rather, the Fekkes individually submitted the version of the irrevocable election and Annual Forms applicable to landholders subject to the discretionary provisions of the RRA. They did this for the 2010, 2011, and 2012 irrigation seasons.

Prior to the 2013 irrigation season, the Fekkes purchased another parcel of property subject to the RRA, which was taken in the name of Fekkes Dairy, LLC.

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY. . .** + 3

William Fekkes met with Poldervart again prior to the 2013 irrigation season to establish eligibility to receive reclamation water in 2013, and at such time advised Poldervart of the new acquisition. This led to the realization that Petitioner should have been listed as a wholly-owned entity on Section 6 of the Form 7-2180 for the 2010, 2011, and 2012 seasons and Petitioner should have submitted the irrevocable election, not the Fekkes individually.

Immediately upon recognizing the oversight, Petitioner executed an irrevocable election. In August 2013, the Bureau instructed the Fekkes to submit corrected forms for the 2010, 2011, and 2012 irrigation seasons, which they completed immediately. On September 11, 2013, bills for collection were sent to QCBID which assessed compensation charges for reclamation irrigation water delivered to Petitioner for ineligible excess land during the 2010, 2011, and 2012 water years; the bills also assessed administrative fees for each year. The compensation charges were as follows: $8,659.12 in 2010; $8,529.44 in 2011; and $ 8,287.11 in 2012. The administrative fee was $230.00 for each year.

On October 9, 2013, Petitioner appealed the bills imposing compensation charges and administrative fees for the 2010, 2011, and 2012 irrigation season. On November 16, 2015, the Commissioner issued the Bureau's final determination denying Petitioner's appeal and affirming the imposition of the compensation charges. Petitioner appealed to the Office of Hearings and Appeals of the United States Department of Interior (OHA), which issued its Final Order on September 26, 2016, affirming the imposition of compensation charges. Petitioner filed the instant Petition for Judicial Review of Administrative Order on October 25, 2016, and paid all of the compensation charges and administrative fees on December 22, 2016.

## STANDARD OF REVIEW

This is an action for judicial review of the Final Order entered by OHA pursuant to the Administrative Procedure Act (APA). Under the APA, the Court

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY. . .** + 4

"shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of agency action." 5 U.S.C. § 706. The Court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id.* Under the arbitrary or capricious standard, the Court "will sustain an agency action if the agency has articulated a rational connection between the facts found and the conclusions made." *Pac. Coast Fed'n of Fishermen's Ass'ns v. U.S. Bureau of Reclamation*, 426 F.3d 1082, 1090 (9th Cir. 2005). "This standard of review is 'highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision.'" *Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, 833 F.3d 1136, 1146 (9th Cir. 2016) (quoting *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1115 (9th Cir. 2007)). Judicial review under § 706 is a review of the administrative record. 5 U.S.C. § 706.

## ANALYSIS

**I. Reclamation Has Statutory Authority to Assess Compensation Charges**

Petitioner's primary argument is that the Bureau lacks the statutory authority to impose the full-cost compensation charges assessed for water deliveries in excess of 160 acres for the water years 2010, 2011, and 2012. Respondents argue, to the contrary, that it is required by law to seek collection of full-cost charges for water delivered to Petitioner in excess of 160 acres. The Court agrees with Respondents.

Pursuant to 43 U.S.C. § 390ii(a), irrigation water "may not be delivered for use in the irrigation of lands held in excess of the ownership limitations imposed by Federal reclamation law." Excess land is "nonexempt land that is in excess of a landowner's maximum ownership entitlement under the applicable provisions of

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY. . .** + 5

Federal reclamation law." 43 C.F.R. § 426.2. The Bureau's statutory basis for the collection of underpayments is 43 U.S.C. § 390ww. It provides:

> When the Secretary finds that any individual or legal entity subject to reclamation law, including this subchapter, has not paid the required amount for irrigation water delivered to a landholding pursuant to reclamation law, including this subchapter, he shall collect the amount of any underpayment with interest accruing from the date the required payment was due until paid.

*Id.* §390ww(i). The statute does not define what constitutes an underpayment, but rather directs the Bureau to collect underpayments where individuals have not paid the full amount for water deliveries as required by law.

As noted in OHA's Final Order, the Bureau's decision to charge full-cost for the irrigation water delivered in excess of 160 acres was based on its interpretation of 43 C.F.R. § 426.12(h), which states:

> (h) Application of the compensation rate for irrigating ineligible excess land with irrigation water. Reclamation will charge the following for irrigation water delivered to *ineligible excess land* in violation of Federal reclamation law and these regulations:
> (1) *The appropriate compensation rate for irrigation water delivered*; and
> (2) any other applicable fees as specified in § 426.20.

*Id.* (emphasis added). "Compensation rate means a water rate applied, in certain situations, to water delivery to ineligible land that is not discovered until after the delivery has taken place. The compensation rate is equal to the established full-cost rate that would apply to the landholder if the landholder was to receive irrigation water on land that exceeded a nonfull-cost entitlement." 43 C.F.R. § 426.2.

Petitioner contends that the Bureau's regulations cannot constitute congressional delegation of authority to the agency to collect the compensation charges at issue. However, the Secretary of the Interior is vested with the authority to make rules and regulations as necessary and proper for the purpose of carrying

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY. . .** + 6

out the provisions of the Reclamation Act. 43 U.S.C. § 373. There is no challenge to the validity of these regulations. Based on the plain language of the RRA and pertinent regulations, Respondents have the statutory authority to collect underpayments for irrigation water delivered to ineligible excess lands at the full-cost rate, as detailed above.

It is undisputed that at all times relevant to this lawsuit Petitioner was a prior law recipient only eligible to receive reclamation water sufficient to irrigate 160 acres of land. Accordingly, any irrigation water delivered to Petitioner in excess of 160 acres constituted a delivery to "ineligible excess lands," subject to collection of underpayment at the appropriate compensation rate, i.e., full cost. *See* 43 C.F.R. § 426.2. Petitioner received irrigation water in the amount of 380.8 acres during the applicable water years, although it was only entitled to receive water sufficient to irrigate 160 acres. Accordingly, the Bureau properly assessed compensation charges for water deliveries to the 220.8 ineligible excess acres in the years 2010, 2011, and 2012 at full cost, as it is statutorily mandated to do.

## II. The Compensation Charges Are Not a Penalty

Next, Petitioner relies on *Orange Cove Irrigation Dist. v. United States*, 28 Fed. Cl. 790 (1993), for the proposition that the compensation charges at issue constitute an impermissible penalty. However, *Orange Cove Irrigation Dist.* is distinguishable from the present case.

Pursuant to the APA, "[a] sanction may not be imposed or a substantive rule or order issued except within jurisdiction delegated to the agency and as authorized by law." 5 U.S.C. § 558(b). A sanction is defined to include the "imposition of penalty or fine"; or "assessment of damages, reimbursement, restitution, compensation, costs, charges, or fees." *Id.* §§ 551(10)(C), 551(10)(E). Courts routinely hold that "one is not to be subjected to a penalty unless the words of the statute plainly impose it." *Cole v. U.S. Dept. of Agric.*, 33 F.3d 1263, 1275 (9th Cir. 1994) (citing *Gold Kist, Inc. v. USDA*, 741 F.2d 344, 348 (9th Cir.

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY. . .** + 7

1984)). However, "an agency may impose administrative sanctions not specifically imposed by statute so long as the penalty is reasonably related to the purposes of the enabling legislation." *Id.* (citing *Gold Kist, Inc.*, 741 F.2d at 348).

The controversy in *Orange Cove Irrigation Dist.* arose in 1986 when the Bureau was revising the regulations to conform to the RRA, which had been passed by Congress a few years earlier. Landowners, seeking an increase in water entitlement, were now required to submit reporting forms to conform to the discretionary provisions of the new Act. The Bureau had not yet adopted final regulations, but assuming that the final regulations would be substantially similar to the proposed regulations, the Bureau circulated reporting and certification forms created for the 1987 water year. However, the proposed regulations required considerable revision due to opposition from the regulated community, as did the reporting forms. *Id.* at 794. Accordingly, the Bureau orally told Orange Cove Irrigation District (OCID) and others not to distribute the 1987 reporting and certification forms until the Bureau determined whether the forms needed revision. *Id.*

When it became apparent that the 1987 forms would not be finalized until after the 1987 irrigation season began, the Commissioner "suspended the 'no forms, no water' policy and authorized the initiation of water deliveries to the irrigation districts on the condition that the irrigation district manager would assure the Bureau that the forms would be completed expeditiously when they became available." *Id.* Given the Commissioner's conditional authorization to distribute water, OCID began water deliveries to eligible landowners in March 1987. Ultimately, the forms were not amended and on August 28, 1987, the Bureau directed OCID to submit a summary of the reporting and certification forms it received from landholders by September 25, 1987 and identify landholders who did not complete the forms for the stated reason of non-compliance. *Id.* at 794-95. OCID missed the deadline. On October 20, 1987, the

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY. . .** + 8

Bureau informed OCID to discontinue the delivery of water to any non-filing landholders; however, by that point, all of its landholders had taken the water that they required for the year. *Id.* at 795.

On February 9, 1988, the Bureau directed the irrigation districts to withhold all 1988 water deliveries for landholders until they had submitted their 1987 and 1988 forms, and restated the "no forms, no water" policy, informing the districts that they would be billed at full-cost rate for all water delivered in 1988 during the period of noncompliance. *Id.* On March 31, 1988, the Commissioner advised all irrigation districts that a deadline of May 2, 1988 had been set for completion of the 1987 forms. OCID notified its landholders of the May 2 deadline, and on May 5, 1988, informed the Bureau that 22 of its 700 landholders had not filed their 1987 forms; sixteen of which had received water during 1987. *Id.* On June 23, 1988, the Bureau sent a bill to OCID in the amount of $67,701.20, "representing the difference between the subsidized contract rate and the full-cost rate, plus interest, for the deliveries of water made by OCID to the sixteen noncomplying landholders." *Id.* at 796. By the time OCID received the bill, all but two landholders had filed their required forms, and the remaining two filed in July and August of 1988. All of these sixteen landholders were otherwise eligible to receive the project water they had taken in 1987. *Id.*

The court concluded that the assessment of charges constituted an impermissible penalty. The court noted that the Bureau had waived the filing prerequisite in 1987 when it authorized OCID to begin delivering irrigation water before the forms had been finalized and distributed to landowners; it could not rely on statutory language requiring forms to be filed prior to distribution of water. *Id.* at 802. Moreover, the court determined that the May 2, 1988 filing deadline set by the Bureau was "unreasonable and lacking in good faith," and "served no purpose other than to induce nonfiling landholders to return their 1987 forms so that their eligibility could be verified." *Id.* at 803. The only harm suffered by the Bureau was

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY. . .** - 9

that it received the forms a few months later than it requested. *Id.* at 802.. Accordingly, the court determined that the compensation charges constituted an impermissible penalty that the Bureau had no authority to assess. *Id.*

*Orange Cove Irrigation Dist.* is inapposite here for the following reasons. First, the Bureau did not waive the filing requirements for the 2010, 2011, and 2012 irrigation years as it did in 1987. As such, Petitioner remained a prior law recipient for those years, eligible only to receive irrigation water for 160 acres of land; it admits as much. Second, the events at issue in *Orange Cove Irrigation Dist.* predated the enactment of 43 U.S.C. § 390ww(i) and 43 C.F.R. § 426.12(h), which require the collection of underpayments for water delivered to ineligible excess land. And third, the filing deadlines set by the Bureau for the 2010, 2011, and 2012 irrigation years were not arbitrary or unreasonable; rather, they were set to determine a landholder's eligibility to receive federally-subsidized irrigation water. Accordingly, the Court declines to rely on *Orange Cove Irrigation Dist.* and instead finds that the compensation charges assessed against Petitioner do not constitute a penalty.

## CONCLUSION

In sum, Respondents have the statutory authority and obligation to collect underpayments for water deliveries to ineligible excess lands at the full-cost rate. Respondents fulfilled that statutory mandate in this case.

Accordingly, **IT IS ORDERED:**

1. Plaintiffs' Motion for Summary Judgment, ECF No. 11, is **DENIED**.

2. Defendants' Cross-Motion for Summary Judgment, ECF No. 15, is **GRANTED**.

3. The Final Order of OHA upholding the assessment of compensation charges is **affirmed**.

//

//

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY. . .** + 10

4. The District Court Executive is directed to **ENTER** judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order, provide copies to counsel, and close this file.

**DATED** this 15th day of June, 2017.



Stanley A. Bastian
United States District Judge